UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOUSTEAD SECURITIES, LLC,<br>Plaintiffs,<br><br>vs.<br><br>LEAPING GROUP CO., LTD and<br>ATIF HOLDINGS LIMITED,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 1:20-cv-03749-VEC<br><br>**FIRST AMENDED COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Boustead Securities, LLC ("Plaintiff" or "Boustead"), by their attorneys McGlinchey Stafford, PLLC, make the following Complaint against Leaping Group Company, Ltd. ("Leaping Group") and ATIF Holdings Limited ("ATIF") (collectively "Defendants") and states as follows:

## NATURE OF ACTION

1. This Action arises from Leaping Group and ATIF's breach of agreements with Boustead pursuant to which Boustead was to act as the exclusive financial advisor for, among other transactions, both Leaping Group and ATIF's initial public offerings ("IPOs") on United States stock exchanges. Pursuant to these agreements, Leaping Group and ATIF owe Boustead success fees payable in cash and warrants ("Success Fees") based on transactions and equity financing investments completed during the agreements' applicable time periods.

2. Leaping Group and ATIF entered into a Note Agreement and a Debt Conversion and Share Purchase Agreement with one another, pursuant to which Leaping Group issued a $950,000 note to ATIF under the Note Agreement and Leaping Group issued ordinary shares of its stock to ATIF in exchange for satisfaction of outstanding debt owed to ATIF, along with

1

ordinary shares of ATIF pursuant to the Debt Conversion and Share Purchase Agreement, each an "Equity Investment Transaction" and collectively the "Equity Investment Transactions."

3.  These transactions between Leaping Group and ATIF qualify as "Equity Investment Transactions" pursuant to the terms of Boustead's agreements with Leaping Group and ATIF, entitling Boustead to Success Fees regardless of whether the Leaping Group and ATIF had a general consulting relationship pre-existing their agreements with Boustead. Neither Leaping Group nor ATIF have paid Boustead the Success Fees owed pursuant to their respective agreements.

4.  Upon information and belief, including relevant filings with the United States Securities and Exchange Commission (the "SEC"), Leaping and/or ATIF may have engaged in other transactions during the term and the "tail" period set forth in the agreements for which they owe Boustead Success Fees. By this Action, Boustead seeks to recover all Success Fees it is owed from the Defendants.

**PARTIES**

5.  Plaintiff Boustead Securities, LLC is a California limited liability company with a principal place of business located at 6 Venture, Suite 395, Irvine, California.

6.  Defendant Leaping Group Company, Ltd. is a Cayman Islands limited liability exempt company with a principal place of business located at 2010 Huaruntiexi Center, Tiexi District, Shenyang, Liaoning Province, People's Republic of China.

7.  Defendant ATIF Holdings Limited is a Chinese limited liability company with a principal place of business located at Room 308, Dachong International Centre, 39 Tonggu Road, Nashan District, Shenzhen, People's Republic of China.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this Action involves (a) citizens of a state and citizens or subjects of different foreign states and (b) the amount in controversy exceeds $75,000.

9. Venue is proper in this Court under 28 U.S.C. § 1391 because the terms of the contract at issue between Boustead and Leaping Group stipulates that venue for any action arising out of the agreement is proper in the United States District Court for the Southern District of New York.

10. This Court has personal jurisdiction over Leaping Group because this Action (and the alleged wrongful acts and injuries) arises directly from an agreement Leaping Group signed with Boustead that contemplates suit in the United States and consents to this Court's jurisdiction. Leaping Group also has a presence in the United States and has engaged in continuous and systemic business in the State of New York.

11. The Court has personal jurisdiction over ATIF which is an SEC public reporting company with shares trading on the NASDAQ Capital Market under the symbol "ATIF." ATIF also has had substantial, systemic and continuous contact with the State of New York.

12. Boustead has effected service of process on ATIF pursuant to the Court's Order granting service by alternative means. As of the date of this Amended Complaint, Boustead is in the process of serving Leaping through the Hague Convention.

**GENERAL ALLEGATIONS**

<u>The Parties' Backgrounds</u>

13. Boustead is a broker/dealer and investment banking and financial consulting firm registered with the SEC and is a member of the Financial Industry Regulatory Authority ("FINRA") that specializes in assisting U.S. domestic and Chinese companies with raising capital,

conducting mergers and acquisitions, accessing United States equities markets, and obtaining listings on regulated United States stock exchanges.

14. Leaping Group is a Chinese multimedia marketing company that specializes in movie trailers, commercials and multimedia marketing, invests in television and film original content, and manages movie theaters in northeastern China.

15. ATIF is a consulting company offering financial advisory services to small and medium-sized enterprise customers in China. The focus of ATIF's consulting business is providing going-public consulting services to help its clients become publicly-traded on suitable markets and exchanges.

16. In May 2018, ATIF and Leaping entered into a Consulting Agreement to provide support services around a potential public offering in the United States, which Leaping hired Boustead to underwrite.

17. According to the agreement, ATIF specifically disclaims that, unlike Boustead, it is "<u>not</u> in the business of stock brokerage, investment advisory, underwriting, banking or insurance, nor will it provide any services which may require a registration or is subject to regulations under any applicable laws." (Underline in Original). ATIF agreed to assist Leaping with "due diligence," "Identifying suitable qualified professional firms in the United States," "work with other professionals," Identify "potential employees," and "assist" Leaping with "public reporting requirements."

18. Nothing in the Consulting Agreement provides that ATIF would assist Leaping or participate with Leaping to raise capital or otherwise advise on financial transactions. Indeed, the agreement explicitly states the opposite is true.

**Boustead's Agreement with Leaping Group**

19. On or about October 17, 2018, Boustead and Leaping Group entered into an exclusive financial advisor engagement agreement ("Leaping Agreement") in anticipation of Leaping Group's planned IPO and pre-IPO financings, along with other transactions. The Leaping Agreement, unlike the ATIF Consulting Agreement, contemplates that Boustead would be provided financial services designed to underwrite a public offering or otherwise facilitate fund raising transactions. A true and correct copy of the Leaping Agreement is attached hereto as Exhibit A.

20. Section 2 of the Leaping Agreement provided that Boustead was to be paid a cash success fee of 6.5% of any amounts raised by Leaping Group through the "Equity Investment Transaction," plus warrants equal to a number of shares calculated as 6.5% of the gross amount disbursed to Leaping Group divided by the price per share for the Equity Investment Transaction, through each such Equity Investment Transaction. *Id*.

21. Under the Leaping Agreement, the definition of a "Transaction" includes: "any common stock, preferred stock convertible stock, LLC or LP Memberships, convertible debentures, convertible debt, debt with warrants or any other securities convertible into common stock, any form of debt instrument involving any form of equity participation, and including the conversion or exercise of any securities sold in any Transaction." *Id.*

22. The Leaping Agreement provided Boustead with the right of first refusal for two (2) years from the consummation of a Transaction or termination or expiration of the Leaping Agreement to act as Financial Advisor or to act as joint Financial Advisor on at least equal economic terms on any public or private financing (debt or equity), merger, business combination, recapitalization, or sale of some or all of the equity or assets of Leaping Group (collectively "Future Services").

23. Paragraph 6 of the Leaping Agreement provides that

> In addition, upon termination or expiration of this Agreement, Boustead shall be entitled to a Success Fee(s), as defined above, *if the Company [Leaping] completes a Transaction with a party, which became aware of the Company or which became known to the Company prior to such termination . . . during the twelve (12) month period following the termination or expiration of this Agreement.*

(Exhibit A at 4) (Emphasis added) ("Success Fee Provision").

24. Leaping Group and ATIF entered the Equity Investment Transactions and neither party provided Boustead notification of the Future Services related to the Equity Investment Transactions. Under the Future Services provision of the Leaping Agreement Boustead is to be compensated consistent with Section 2 of the Leaping Agreement, unless mutually agreed otherwise by Leaping Group and Boustead. *Id*.

25. Further, given the interrelated dealing among Leaping and ATIF, both of which had agreements with Boustead and all of whom were working towards a Leaping Group IPO. In other words, Leaping Group and ATIF were both aware of Boustead and its respective agreements with the other.

26. The Parties agreed to extend the Offering Period for an additional 60 days until August 17, 2020. A true and correct copy of the Extension Agreement is attached hereto as Exhibit B.

27. Further, the Extension Agreement between Boustead and Leaping Group stipulated that any action, proceeding or claim arising from the Leaping Agreement would be brought in the state courts of New York or the United States District Court for the Southern District of New York. See Exhibit B.

28. On September 24, 2019, Boustead and Leaping Group entered into a First Amendment to Engagement Agreement, pursuant to which the term of the Leaping Agreement

was extended from twelve (12) months to *twenty (20) months* (or until May 17, 2020). As a result of this amendment, the Leaping Agreement's tail expiration date was extended to on or about <u>May 17, 2021</u>. The Equity Investment Transactions were completed by Leaping Group and ATIF prior to the expiration of the Leaping Agreement. A true and correct copy of the First Amendment is attached hereto as Exhibit C.

**Boustead's Agreement with ATIF**

29. On or about September 4, 2018, Boustead and ATIF entered into an exclusive financial advisor engagement agreement (the "ATIF Agreement") pursuant to which Boustead would act as ATIF's exclusive financial advisor in connection with ATIF's application for listing on NASDAQ or the New York Stock Exchange. A true and correct copy of the ATIF Agreement is attached hereto as Exhibit D. Notably, the ATIF Agreement also contains a "Success Fee Provision" similar to the Leaping Agreement: "if the Company [ATIF] completes a Transaction with a party, which became aware of the Company or which became known to the Company prior to such termination . . . during the twelve (12) month period following the termination or expiration of this Agreement."

30. Per Section 2 of the ATIF Agreement provided that Boustead was to be paid a cash success fee of 6.5% of any amounts raised by ATIF through the "Equity Investment Transaction", plus warrants equal to a number of shares calculated as 6.5% of the gross amount disbursed to ATIF divided by the price per share for the Equity Investment Transaction, through each such Equity Investment Transaction. *Id*.

31. Under the ATIF Agreement, the definition of "Transaction" includes: "any common stock, preferred stock convertible stock, LLC or LP Memberships, convertible debentures, convertible debt, debt with warrants or any other securities convertible into common

stock, any form of debt instrument involving any form of equity participation, and including the conversion or exercise of any securities sold in any Transaction." *Id.*

32.     On April 23, 2019, Boustead and ATIF entered into an "Amendment No. 1 to Engagement Letter" which amended the success fee due to Boustead to a cash success fee of 6.5% of the first $10,000,000 in equity investment Transactions and 6% of any amount in excess thereof, and warrants equal to 6.5% of the gross amounts disbursed for each equity investment transaction, exercisable at a strike price equal to one hundred and twenty percent (120%) of the offering price for ATIF's ordinary shares for the proposed IPO. A true and correct copy of Amendment No. 1 to Engagement Letter is attached hereto as Exhibit E.

33.     On or about May 3, 2019, ATIF's IPO Registration Statement with the SEC became effective and its ordinary shares began trading on the NASDAQ securities market under the ticker "ATIF." ATIF's offering price at the time of the IPO was $5.00 per ordinary share, and as of November 6, 2020, ATIF's ordinary shares were trading at approximately $0.67 per share on NASDAQ.

**Relationship Between Leaping Group and ATIF**

34.     On December 18, 2018, Leaping Group and ATIF entered into another Consulting Agreement, which is substantially similar to the May 2018 Consulting Agreement between the parties described above. Again, ATIF's contemplated services under the Agreement were not financial consulting in nature. A true and correct copy of this additional Consulting Agreement between Leaping Group and ATIF is attached hereto as Exhibit F.

35.     Under the December 18, 2018 Consulting Agreement, ATIF was entitled to payments from Leaping Group under the Consulting Agreement in three installments of: (1) $468,000 paid within three days of the Consulting Agreement's effectiveness; (2) $468,000 to be

paid upon completion of the restructuring and commencement of SEC filings for Leaping Group's IPO; and (3) $564,000 upon receipt of SEC documents for Leaping Group's IPO.  *Id.*

36.     On December 3, 2019, Leaping Group and ATIF entered into a First Amendment to Amended and Restated Consulting Agreement, pursuant to which the remaining $1,435,000 owed by Leaping Group to ATIF under the Consulting Agreement would be paid as: (1) $200,000 in cash at the close of Leaping Group's IPO; and (2) $1,235,000 worth of Leaping Group ordinary shares to ATIF at the IPO price.  A true and correct copy of the First Amendment to Amended and Restated Consulting Agreement is attached hereto as Exhibit G.

37.     The First Amendment to Amended and Restated Consulting Agreement further provided that if the Leaping Group IPO does not close by December 31, 2021, the unpaid remaining balance of the $1,435,000 owed by Leaping Group to ATIF would be paid in cash and become due on January 1, 2022.  *Id*.

38.     On January 20, 2020, ATIF provided a $950,000 loan to Leaping Group and its subsidiary.  Neither Leaping Group nor ATIF informed Boustead of this loan, and Boustead did not learn of the loan until ATIF disclosed it as part of its April 8, 2020 Form 6-K filing with the SEC.  Although required by securities laws to report such material events within four days of their occurrence, neither ATIF nor Leaping Group disclosed this loan in any of their respective SEC filings until April 8, 2020, more than two and a half months after the loan was made.

39.     On February 11, 2020, Leaping Group and ATIF entered into a Second Amendment to Amended and Restated Consulting Agreement, amending the terms of the consulting payments owed by Leaping Group to ATIF to: (1) $200,000 in cash at the time of the closing of Leaping Group's IPO; and (2) 300,000 five-year warrants for Leaping Group ordinary shares with an

exercise price at the IPO offering price. A true and correct copy of the Second Amendment to Amended and Restated Consulting Agreement is attached hereto as Exhibit H.

**Leaping Group Withdraws its IPO and Enters into**
**Debt Conversion Share Purchase Agreement With ATIF**

40. On March 13, 2020, Leaping Group withdrew its registration statement with the SEC for its planned IPO. Leaping Group further stated in its application for withdrawal that it "may undertake a subsequent private offering."

41. On April 23, 2020, ATIF filed a Form 6-K with the SEC that disclosed that it had acquired approximately 51.2% of the issued and outstanding shares of Leaping Group through a (1) debt conversion and share purchase agreement; and (2) a share exchange agreement that ATIF had entered into with Leaping Group and its shareholders.

42. Under the terms of the debt conversion and share purchase agreement between ATIF and Leaping Group, ATIF was issued 3,934,029 ordinary shares of Leaping Group in exchange for: (1) satisfaction of the $1,851,000 outstanding debt owed to ATIF by Leaping Group; and (2) the issuance of 2,800,000 ordinary shares of ATIF to Leaping Group.

43. The $1,851,000 in outstanding debt owed to ATIF by Leaping Group that was converted to ordinary shares of Leaping Group pursuant to the debt conversion and share purchase agreement included the $950,000 loan made by ATIF to Leaping Group on January 20, 2020.

44. Under the terms of the share exchange agreement, the shareholders of Leaping Group assigned an aggregate of 6,283,001 ordinary shares of Leaping Group to ATIF in exchange for an aggregate of 7,140,002 ordinary shares of ATIF.

45. The share exchange agreement extinguished Leaping Group's outstanding shares and Leaping Group became a wholly-owned subsidiary of ATIF. ATIF dominates and controls Leaping Group such that ATIF and Leaping Group are alter egos.

46. For example, public documents filed with the SEC including ATIF's April 23, 2020 Form 6-K disclosing its investment in Leaping Group include statements from Leaping Group such as: "[w]e are excited about partnering with ATIF Holdings Limited and will stand up together to face the challenges and opportunities brought by COVID-19 pandemic."

47. ATIF's public statements made in connection with its investment in Leaping Group include: "[w]e are thrilled to complete the acquisition of a controlling interest in [Leaping Group]. [Leaping Group] is a well-established multimedia industry leader with additional appraisal and development upside. The acquisition will expand our capacity to meet increasing demand for multimedia industry and diversify our portfolios. Looking ahead, we will continue to implement ATIF's growth strategy to create value for our shareholders."

**Leaping Group and ATIF Fail to Pay Boustead Success Fees and Warrants Owed**

48. The debt conversion and share purchase agreement between ATIF and Leaping Group and the share exchange agreement between ATIF and Leaping Group's shareholders qualify as "Equity Investment Transactions" under the terms of Boustead's agreements with Leaping Group and ATIF.

49. Pursuant to its agreement with Boustead, Leaping Group is obligated to pay Boustead a success fee in the amount of 6.5% of the total value of (1) the $1,851,000 in debt satisfaction by ATIF, (2) the 2,800,000 ordinary shares of ATIF it received pursuant to the debt conversion and share repurchase agreement, (3) the 7,140,000 ATIF ordinary shares received by Leaping Group selling shareholders, and (4) the $950,000 convertible note from Leaping Group to ATIF. Leaping Group is also obligated to provide Boustead with warrants equal to a number of shares calculated as 6.5% of the gross amount distributed to Leaping Group divided by the price per share for the Transaction.

50. Pursuant to its agreement with Boustead, ATIF is obligated to pay Boustead a success fee in the amount of 6.5% of the total value of (1) the 3,934,029 Leaping Group ordinary shares received by ATIF and (2) the 6,283,011 Leaping Group ordinary shares received from Leaping Group selling shareholders. ATIF is also obligated to provide Boustead with warrants equal to a number of shares calculated as 6.5% of the gross amount distributed to ATIF divided by the price per share for the Transaction.

51. Upon information and belief, both Leaping Group and ATIF have entered into additional undisclosed Transactions both with each other and with third parties. Boustead may also be entitled to cash and/or warrant success fee(s) from these Transactions, and Boustead reserves the right to amend its complaint and seek such other and further relief as appropriate.

### COUNT I – BREACH OF CONTRACT
**(Against Leaping Group and ATIF)**

52. Plaintiff incorporates each of the allegations above as if set forth herein.

53. Both Leaping Group and ATIF entered into valid and enforceable contracts with Boustead.

54. Boustead performed all of its obligations pursuant to its contracts with Leaping Group and ATIF, which included but are not limited to, financial advising, underwriting services and other activities as specifically described in the parties' respective agreements, which are attached as Exhibits hereto.

55. Leaping Group and ATIF have both breached their contracts with Boustead by failing to pay Boustead success fees and warrants owed pursuant to the terms of the contracts, including in connection to the transactions between Leaping and ATIF described above.

56. As a result, Boustead has been damaged by Leaping Group's and ATIF's breaches of their contracts with Boustead.

### COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Leaping Group and ATIF)

57. Plaintiff incorporates each of the allegations above as if set forth herein.

58. The Leaping Agreement and the ATIF Agreement are binding contracts.

59. Both the Leaping Agreement and the ATIF Agreement contain implied covenants of good faith and fair dealing.

60. As described above, separate from and/or as an alternative to any breaches of express contractual provisions, Leaping Group and ATIF have breached the implied covenant of good faith and fair dealing by failing to inform Boustead of the loan agreement, debt conversion and share purchase agreement and share exchange agreement in an effort to avoid paying Boustead cash and warrant success fees owed to Boustead pursuant to the Leaping Agreement and ATIF Agreement. Boustead did not learn of the loan agreement, debt conversion and share purchase agreement and share exchange agreement between Leaping Group and ATIF until it was disclosed in ATIF's April 8, 2020 Form 6-K.

61. Leaping Group's and ATIF's bad faith in failing to bring transactions to Boustead's attention to avoid paying contractual fees constitutes a breach of the implied covenant of good faith and fair dealing because they were designed to avoid express contractual obligations and breaches as described herein.

62. Boustead has suffered damages as a result of Leaping Group's and ATIF's breaches in an amount to be determined at trial.

### COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (Against Leaping Group and ATIF)

63. Plaintiff incorporates each of the allegations above as if set forth herein.

64. Boustead and Leaping Group entered into a contractual relationship under the Leaping Agreement by which Boustead was and continues to be Leaping Group's exclusive financial advisor in connection with Leaping Group's corporate finance activities. Boustead expected to benefit financially from the Leaping Agreement and its business relationship with Leaping Group.

65. ATIF was aware of the Leaping Agreement and the contractual relationship between Boustead and Leaping Group.

66. ATIF intentionally and improperly procured a breach of the Leaping Agreement and Boustead's business relationship with Leaping Group by entering into its own financing agreements with Leaping Group despite ATIF's knowledge that Boustead was acting as Leaping Group's exclusive financial advisor and to otherwise thwart payment by Leaping to Boustead under the Leaping Agreement.

67. ATIF also intentionally and in bad faith withheld information concerning its financing agreement with and investment in Leaping Group from Boustead in an attempt to prevent Boustead from obtaining cash and warrant success fees it was due under the Leaping Agreement.

68. As a result of ATIF's wrongful conduct, Boustead has been deprived of the intended benefits of the Leaping Agreement and its business relationship with Leaping Group.

70. Boustead has been damaged by ATIF's intentional interference with its business relationship with Leaping Group in an amount to be determined at trial.

71. Boustead and ATIF entered into a contractual relationship under the ATIF Agreement by which Boustead was to be ATIF's exclusive financial advisor in connection with ATIF's corporate finance activities. Boustead expected to benefit financially from the ATIF Agreement and its business relationship with ATIF.

72. Leaping Group was aware of the ATIF Agreement and the contractual relationship between Boustead and ATIF.

73. Leaping Group intentionally and improperly procured a breach of the ATIF Agreement and Boustead's business relationship with ATIF by entering into its own financing agreements with ATIF despite Leaping Group's knowledge that Boustead was acting as ATIF's exclusive financial advisor and to otherwise thwart payment by ATIF to Boustead.

74. Leaping Group intentionally and in bad faith withheld information concerning its financing agreement with ATIF from Boustead in an attempt to prevent Boustead from obtaining cash and warrant success fees it was due under the ATIF Agreement.

75. As a result of Leaping Group's wrongful conduct, Boustead has been deprived of the intended benefits of the ATIF Agreement and its business relationship with ATIF.

76. Boustead has been damaged by Leaping Group's intentional interference with its business relationship with ATIF in an amount to be determined at trial.

### COUNT IV – QUANTUM MERUIT
### (Against Leaping Group and ATIF)

77. Plaintiff incorporates each of the allegations above as if set forth herein.

78. Plead in the alternative, and to the extent the Court determines that no contract existed between the parties covering the scope of Boustead's services to the defendants, Boustead provided services to both Leaping Group and ATIF for which both Leaping Group and ATIF agreed to compensate Boustead.

79. Boustead fully performed the anticipated services to both Leaping Group and ATIF but has not been compensated for such services by either Leaping Group or ATIF.

80. Boustead has been damaged by Leaping Group's and ATIF's failures to compensate Boustead for services performed.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons and after a trial on the merits, Boustead requests that the Court grant the following relief:

(a) Enter judgment in Boustead's favor on each of its Counts;

(b) Grant Boustead all statutory and other damages to which it is entitled under law; and

(c) Such other and further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

|  |  |
|---|---|
| Dated: November 10, 2020 | Plaintiff:<br>BOUSTEAD SECURITIES, LLC<br>By its counsel:<br>*/Jack I. Siegal/*<br>Jack I. Siegal, BBO #: 669173<br>Jameson Pasek, BBO#: 692924<br>MCGLINCHEY STAFFORD, PLLC<br>One Boston Place, Suite 2910<br>Boston, MA 02108<br>(857) 453-7152 – Phone<br>(617) 830-8385 – Fax<br>jsiegal@mcglinchey.com<br>jpasek@mcglinchey.com<br><br>Ashley "Asher" A. Klein #4733572<br>MCGLINCHEY STAFFORD, PLLC<br>12 West 34th Street, Suite 1515<br>New York, NY 10120<br>(646) 362-4061 – Phone<br>(646) 365-2091 – Fax<br>aklein@mcglinchey.com |