USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/25/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
BOUSTEAD SECURITIES, LLC,                       :
                                                :
                              Plaintiff,        :
                                                :          20-CV-3749 (VEC)
              -against-                         :
                                                :          OPINION & ORDER
LEAPING GROUP CO., LTD. and ATIF                :
HOLDINGS LIMITED,                               :
                                                :
                              Defendants.       :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Boustead Securities, LLC ("Boustead") sued Defendants ATIF Holdings Limited ("ATIF") and Leaping Group Co., Ltd. ("Leaping") (collectively "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business relations, and *quantum meruit*. *See generally* Am. Compl., Dkt. 53. ATIF moved to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Dkt. 63. For the following reasons, ATIF's motion to dismiss is GRANTED.

## BACKGROUND[2]

### I. The ATIF Agreement

Boustead is an investment banking and financial consulting firm specializing in helping American and Chinese companies raise capital and obtain listings on United States stock exchanges. Am. Compl. ¶ 13. On September 4, 2018, Boustead entered into an agreement with

---

[1]    Plaintiff served Leaping through the Hague Convention on March 15, 2021. Dkt. 81. As of August 25, 2021, Leaping has not appeared or answered the Amended Complaint. No later than September 7, 2021, Plaintiff must move for default judgment consistent with the Undersigned's individual practices.

[2]    For purposes of this opinion, Plaintiff's well-pled factual allegations are accepted as true.

ATIF, a consulting and financial advisory firm, pursuant to which Boustead agreed to "act as ATIF's exclusive financial advisor in connection with ATIF's application for listing on the NASDAQ or the New York Stock Exchange." *Id*. ¶¶ 15, 29; Dkt. 53-1, Ex. D ("ATIF Agreement"). Specifically, the parties agreed that Boustead would underwrite ATIF's potential initial public offering ("IPO") and advise ATIF on "corporate development, corporate finance, and capital placement transactions." ATIF Agreement at 1–2. Boustead also agreed to introduce ATIF to other firms, products, and services as needed. *Id.*

Section 2 of the ATIF Agreement provided that, "in connection with the services to be rendered hereunder, and subject to FINRA approval," Boustead would receive a success fee whenever ATIF completed an Equity Investment Transaction ("EIT"). Am. Compl. ¶¶ 30, 31; ATIF Agreement § 2 (the "Success Fee Provision"). The ATIF Agreement specified that Boustead would only be entitled to such a success fee if AITF completed the EIT "with a party, which became aware of [ATIF] or which became known to [ATIF]" prior to the termination or expiration of the ATIF Agreement *or* "during the twelve month period following the termination or expiration of the Agreement," known as the "tail period." ATIF Agreement § 6. Finally, Boustead retained the right of first refusal to act as the financial advisor on certain ATIF transactions for two years after the ATIF Agreement expired. *Id.* § 7 (the "Futures Services Provision").[3]

On May 3, 2019, ATIF's shares began trading on the NASDAQ. Am. Compl. ¶ 33. ATIF's offering price at the time of the IPO was $5.00 per share; as of November 6, 2020, the price had fallen to $0.67 per share. *Id*.

---

[3] On April 23, 2019, Boustead and ATIF amended the ATIF Agreement. Am. Compl. ¶ 32; Dkt. 53-1, Ex. E. The Amended Agreement modified the amount of the success fee and eliminated ATIF's right of first refusal to act as Boustead's financial advisor after the ATIF Agreement expired. *Id.*

## II.  The Leaping Agreement

On October 17, 2018, Plaintiff and Leaping, a Chinese multimedia marketing company, entered into a financial advisor agreement that was nearly identical to the ATIF Agreement. Am. Compl. ¶¶ 14, 19-21, Dkt. 53-1, Ex. A ("the Leaping Agreement"). Pursuant to the Leaping Agreement, Plaintiff agreed to underwrite Leaping's planned IPO and to facilitate its fundraising transactions. *Id.* ¶ 19. The Leaping Agreement contained the same Success Fee Provision, Futures Services Provision, explanation of the services to be rendered, payment terms, tail period, and definition of an EIT as the original ATIF Agreement. *Id.* ¶¶ 20–23; Leaping Agreement at 2–4.

## III.  The ATIF-Leaping Agreement

On December 18, 2018, Leaping entered into a consulting agreement with ATIF, pursuant to which ATIF agreed to "render such services as may be needed in order for [Leaping] to become a public company in the United States of America." Am. Compl. ¶ 34; Ex. F (the "ATIF-Leaping Agreement"). Specifically, the ATIF-Leaping Agreement contemplated that ATIF would, *inter alia,* conduct due diligence, identify potential employees and board members, and assist Leaping in meeting public reporting requirements.[4] Am. Compl. ¶ 34; Ex. F at 3-4. On January 20, 2020, unbeknownst to Boustead, ATIF provided a $950,000 loan to Leaping.[5] Am. Compl. ¶ 38. On March 13, 2020, Leaping withdrew its previously-filed registration statement for a planned IPO and announced that it would pursue a private offering. *Id.* ¶ 40.

---

[4]  In May 2018, Leaping and ATIF had entered into a Consulting Agreement; the terms of the December 2018 ATIF-Leaping Agreement were substantially the same as the prior Consulting Agreement. Am. Compl. ¶¶ 16, 34.

[5]  On February 11, 2020, Leaping and ATIF amended their consulting agreement to adjust the terms of ATIF's compensation in light of the loan. *Id.* ¶ 39.

3

On April 23, 2020, ATIF filed a Form 6-K with the SEC disclosing that it had acquired approximately 51.2% of Leaping's issued and outstanding shares through a Debt Conversion and Share Purchase Agreement and a Share Exchange Agreement between ATIF, Leaping, and Leaping's shareholders. *Id.* ¶ 41. As a result of the Share Exchange Agreement, Leaping became a wholly owned subsidiary of ATIF. *Id.* ¶ 45. Neither ATIF nor Leaping informed Boustead of the Debt Conversion and Share Purchase Agreement or the Share Exchange Agreement, both of which qualified as EITs and triggered success fees pursuant to the ATIF and Leaping Agreements. *Id.* ¶¶ 48, 60.

On May 14, 2020, Boustead initiated this action, asserting claims against ATIF and Leaping for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business relations, and *quantum meruit*. Am. Compl. ¶¶ 52–80. ATIF has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 63.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations or "legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alteration in original) (citation omitted).

4

On a motion to dismiss, the Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

## I. ATIF's Motion to Dismiss the Breach of Contract Claim is Granted

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996)).

Boustead alleges that ATIF breached the ATIF Agreement by failing to pay Plaintiff the required success fees stemming from its Debt Conversion and Share Purchase Agreement and Share Exchange Agreement with Leaping. Am. Compl. ¶ 55. ATIF argues that Boustead has failed to allege adequately its own performance under the ATIF Agreement or the performance of all conditions precedent. Def. Mem. of Law, Dkt. 65 at 10–13. The Court agrees.

### a. Boustead Has Failed to Allege Adequately its Own Performance

It is well-settled that a plaintiff must plead more than a mere "formulaic recital of the required elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 545. As such, in the context of a breach of contract claim, a plaintiff must allege, *inter alia*, sufficient factual matter from which the Court can infer that the plaintiff performed under the relevant agreement. *Id.; Uncas Int'l LLC v. Crimzon Rose, Inc.*, No. 16-CV-9610, 2017 WL 2839668, at *3 (S.D.N.Y. June 26, 2017) ("pleading of a plaintiff's own performance is subject

5

to the same pleading standard as other allegations, *i.e.*, the plausibility requirement set out in *Iqbal*").

Boustead alleges that it "performed all of its obligations pursuant to its contracts with Leaping Group and ATIF, which included but are not limited to, financial advising, underwriting services and other activities as specifically described in the parties' respective agreements." Am. Compl. ¶ 54. Plaintiff's allegation is conclusory and insufficient to plead performance. Boustead has failed to identify a single specific action it took pursuant to the ATIF Agreement, including any facts regarding the nature of the financial advice it gave to ATIF, any conversations it had with ATIF about its corporate development, or any firms or products it introduced to ATIF.[6] *See* ATIF Agreement at 1 ("Boustead will provide advisory services to [ATIF] in the areas of corporate development, corporate finance and/or capital placement transactions. Boustead will also introduce other firms, products and services to [ATIF] as needed during the normal course of business and act as coordinator for all activities within its purview."). Moreover, Boustead has not even attempted to differentiate its performance pursuant to the ATIF Agreement from its performance under the Leaping Agreement, but merely avers generally that it "performed all of its obligations pursuant to [both] contracts." Am. Compl. ¶ 54. Plaintiff's vague and conclusory assertion that it "performed all of its obligations," without more, is insufficient to allege performance under the ATIF Agreement.[7] *See Iqbal*, 556

---

[6] Because the facts evincing Boustead's own performance under the ATIF Agreement should be within Boustead's knowledge and control, Plaintiff's failure to allege facts supporting its conclusory allegation that it performed under the contract is puzzling, albeit consistent with Plaintiff's lackadaisical approach to litigating this case.

[7] Plaintiff relies on *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344 (S.D.N.Y. 2012), to support its argument that it may allege its performance generally, "without delving into a delineation of every action that it has taken under the ATIF Agreement." Pl. Opp., Dkt. 72 at 11. Plaintiff mischaracterizes the holding of *Nat'l Gear*. In *Nat'l Gear*, the plaintiff alleged that it had "developed customer relationships; offered for sale components and materials required by customers; set pricing and payment terms for such sales; acquired from

6

U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012) (holding that plaintiff's assertion that it "performed all of its obligations under the Agreement" was conclusory and failed "to sufficiently allege its adequate performance under the Agreement"); *Napster, LLC v. Rounder Records Corp.*, 761 F. Supp. 2d 200, 208 (S.D.N.Y. 2011) (holding that plaintiff's allegation that it "performed all of the terms and conditions required to be performed by it under the [] Agreement" was "merely a legal conclusion").

### b. Boustead Has Failed to Plead Satisfaction of a Condition Precedent

"Adequate performance" of a plaintiff's obligations under a contract includes satisfaction of conditions precedent to the defendant's obligations. *Harbinger F&G, LLC v. OM Grp. (UK) Ltd.*, No. 12-CV-5315, 2015 WL 1334039, at *22 (S.D.N.Y. Mar. 18, 2015) ("A party seeking to enforce a contractual obligation subject to a condition precedent to performance must show it has satisfied all its obligations under the contract by a preponderance of the evidence.").

The parties agree that a condition precedent to Boustead's right to obtain a success fee was that Boustead seek and receive FINRA approval for the requested fee. ATIF Agreement § 2 ("In connection with the services to be rendered hereunder, *subject to FINRA approval*, [ATIF] agrees to pay Boustead the following fees and expenses.") (emphasis added). What the parties dispute is whether Plaintiff has adequately alleged satisfaction of this condition precedent. Specifically, ATIF argues that Boustead has failed entirely to allege that it sought and received

---

[defendant's] inventory to fulfill orders actually placed, and provided after-sale service and information to customers." 861 F. Supp. 2d at 360. It was these specific allegations, not merely an allegation that plaintiff generally performed pursuant to the agreement, that the court held to be "sufficient to allege [plaintiff's] due performance." *Id*. Here, Boustead's allegation that it "preformed all of its obligations pursuant to its contracts with Leaping Group and ATIF," Am. Compl. ¶ 54, is devoid of any of the sort of specific facts that were alleged in *Nat'l Gear* and is insufficient adequately to plead performance.

7

FINRA approval, because Boustead alleges nothing more than its general allegation that it "performed all of its obligations pursuant to its contracts." Def. Mem. of Law, Dkt. 65 at 10-12; Am. Compl. ¶ 54. Boustead maintains that its general allegation of performance is sufficient because Federal Rule of Civil Procedure 9(c) permits a plaintiff to plead "satisfaction of conditions precedent in a general manner, i.e., *not* with particularity which is required for denials concerning conditions precedent." Pl. Opp., Dkt. 72 at 10 (emphasis in original). This Court considered, and rejected, this very argument in *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.,* No. 15-CV-7231, 2017 WL 3084901, at *5–6 (S.D.N.Y. July 20, 2017).

Rule 9(c) of the Federal Rules of Civil Procedure provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Neither the Supreme Court nor the Second Circuit has considered Rule 9(c) since *Iqbal* and *Twombly* modified the notice pleading standard. *See O.F.I. Imports Inc.,* 2017 WL 3084901, at *5. Nevertheless, this Court and others in this district have held that post-*Iqbal*, Rule 9(c)'s command that conditions precedent be alleged "generally" requires a plaintiff to allege *plausibly* that they have satisfied the conditions precedent. *O.F.I. Imports Inc.,* 2017 WL 3084901, at *5-6 (citing *Dervan v. Gordian Grp., LLC*, No. 16-CV-1964, 2017 WL 819494, at *6 (S.D.N.Y. Feb. 28, 2017) (holding that performance of a condition precedent must be plausibly alleged in accordance with rule 8(a))); *see also Comerica Leasing Corp. v. Bombardier Inc.,* No. 16-CV-614, 2019 WL 11027701, at *8 (S.D.N.Y. Sept. 30, 2019) (concluding that "the occurrence or performance of a condition precedent – to the extent that it need be pled as a required element of a given claim – must be plausibly alleged in accordance with Rule 8(a)."). Put differently, Rule 9(c) does not create a carve-out "from the baseline

8

plausibility requirement of Rule 8(a) but rather only from the 'elevated' standard for denials of such performance established in the second half of the rule." *Dervan*, 2017 WL 819494 at *5. To hold otherwise, as this Court explained in *O.F.I. Imports*, would mean that the phrase "alleged generally" in Rule 9(b) means something completely different than the phrase "allege generally" in Rule 9(c). *O.F.I. Imports Inc.*, 2017 WL 3084901, at *5 (citing *Iqbal,* 556 U.S. at 686-87; *Dervan*, 2017 WL 819494 at *5).

Applying the proper standard under Rule 9(c), Boustead has failed to allege plausibly satisfaction of the condition precedent that it obtain FINRA approval for its success fee. Plaintiff does not allege at any point in its amended complaint that it sought or obtained FINRA approval in connection with the success fees it seeks to recover from ATIF.[8] Instead, Plaintiff merely alleges that it "performed all of its obligations pursuant to its contracts." Am. Compl. ¶ 54. For the reasons noted *supra*, such a threadbare conclusory statement does not provide "sufficient factual matter" to permit this Court to "draw the reasonable inference" that the condition precedent has been satisfied and "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *O.F.I. Imports*, 2017 WL 3084901, at *4; *Dervan*, 2017 WL 819494, at *6 (holding that plaintiff's allegation that "[a]ll conditions precedent to [d]efendant's contractual obligation to pay [p]laintiff [under the agreement] have occurred" was insufficient to adequately allege performance under the agreement).

---

[8] Plaintiff has attached a "No Objections Letter" from FINRA to its opposition brief in an apparent attempt to assure the Court that it satisfied the condition precedent by receiving FINRA approval. Dkt. 73, Ex. A. Boustead, however, "may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.*, 265 F.R.D. 106, 122–123 (S.D.N.Y. 2010); s*ee also Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss). Accordingly, Plaintiff's inclusion of the FINRA letter does not cure its inexplicable failure to include any allegations in its amended complaint regarding its efforts to obtain FINRA approval.

In sum, Boustead has failed adequately to allege its own performance under the ATIF Agreement or the performance of the conditions precedent.[9] The Court will give Boustead one final chance to amend its complaint. No later than **September 24, 2021**, Plaintiff may move for leave to amend its breach of contract claim. The Court warns Plaintiff that its proposed Second Amended Complaint must include specific factual allegations from which the Court can reasonably infer both that it performed under the ATIF Agreement and that it satisfied all conditions precedent. If it fails to do so, leave to file a Second Amended Complaint will be denied.

## II. ATIF's Motion to Dismiss the Breach of the Implied Covenant of Good Faith and Fair Dealing Claim is Granted

The covenant of good faith and fair dealing is implicit in all contracts; it encompasses "any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)); *Carvel Corp. v. Diversified Mgmt. Grp., Inc.,* 930 F.2d 228, 230 (2d Cir. 1991) (explaining the covenant as "an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part."). Although the covenant inheres in every contract, "[t]he scope of potential liability for breach of the covenant is quite narrow," *Witherspoon v. Rappaport*, 65 F.

---

[9] The Court rejects Defendant's argument that Plaintiff is not entitled to a Success Fee because "the business relationship between ATIF and Leaping Group predates the ATIF Agreement." Def. Mem. of Law, Dkt. 65 at 13-15. Section 6 of the ATIF Agreement provides that "Boustead shall be entitled to a Success Fee(s) . . . if [ATIF] completes a Transaction with a party, which became aware of [ATIF] or which became known to [ATIF] prior to such termination or expiration" or during the Tail Period. ATIF Agreement at 4. The ATIF Agreement does not carve out transactions with parties "which became aware of [ATIF] or which became known to [ATIF]" prior to *execution* of the Agreement. As such, ATIF is not exempt from paying Boustead a success fee merely because ATIF knew Leaping prior to entering the ATIF Agreement. If ATIF had wanted the Success Fee Provision to carve out EITs completed with parties known to ATIF prior to the ATIF Agreement, it should have bargained for such a carve out. *See U.S. Bank, Nat'l Ass'n v. UBS Real Est. Sec. Inc.*, 205 F. Supp. 3d 386, 412 (S.D.N.Y. 2016) ("Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied, the time to say so is at the bargaining table.") (quoting *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (2013) (quotation marks and alterations omitted)).

App'x 356, 359 (2d Cir. 2003), and it is not implicated merely because a party acts in its own interests in a way that may incidentally lessen "the other party's anticipated fruits from the contract," *M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990).

A claim for breach of the implied covenant of good faith and fair dealing will "be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of an [] express provision of the underlying contract." *Madison Cap. Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 239 (S.D.N.Y. 2009) (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997)); *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000).  Put differently, in order to allege claims both for breach of contract and breach of the implied covenant, a plaintiff must "allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009); *Trireme Energy Holdings, Inc. & Trireme Energy Dev., LLC v. Innogy Renewables US LLC et al.*, No. 20-CV-5015, 2021 WL 3668092, at *4 (S.D.N.Y. Aug. 17, 2021); *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) ("a party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim.").

In this case, Plaintiff alleges that ATIF breached the implied covenant of good faith and fair dealing by failing to inform Boustead of its various agreements with Leaping, in order to avoid paying the success fees.  Am. Compl. ¶¶ 57-62; Pl. Opp., Dkt. 72 at 13-14.  This is entirely duplicative of Plaintiff's breach of contract claim; both claims are based on ATIF's alleged failure to pay Boustead the success fees required by the ATIF Agreement.  Plaintiff has made no

11

allegations to support its breach of the implied covenant claim that are distinct from the factual predicate for its breach of contract claim. *ICD Holdings S.A.*, 976 F. Supp. at 243–244 (dismissing claim for breach of the implied covenant where breach of contract claim was predicated on defendant's same alleged conduct).

Boustead argues that its claim for breach of the implied covenant is not duplicative because it has alleged that ATIF acted in bad faith. *See* Pl. Opp., Dkt. 72 at 13-14; Am. Compl. ¶ 61 ("ATIF's bad faith in failing to bring transactions to Boustead's attention to avoid paying contractual fees constitutes a breach of the implied covenant of good faith and fair dealing"). The Court disagrees. "Bad faith in connection with a breach of contract claim does not provide an independent basis for recovery." *Symquest Grp., Inc. v. Canon U.S.A., Inc.,* 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016) (citing *Quail Ridge Assoc. v. Chem. Bank,* 162 A.D.2d 917, 558 N.Y.S.2d 655, 657 (3d Dep't 1990)); *InspiRx, Inc. v. Lupin Atlantis Holdings SA.,* No. 20-CV-3214, 2021 WL 3604850, at *18 (S.D.N.Y. Aug. 12, 2021) (dismissing breach of implied covenant claim as duplicative of breach of contract claim and noting that the plaintiff's argument that the defendant acted in bad faith did not "give rise to a cause of action distinct from a breach of contract action."); *Loma Linda Univ. v. Smarter Alloys, Inc.,* No. 19-CV-607, 2020 WL 5549986, at *9 (W.D.N.Y. Aug. 14, 2020) (dismissing implied covenant claim because "even if there was bad faith on the part of [defendants] … the claim is duplicative of the breach of contract claim and does not provide an independent basis for recovery.").

Because the same allegations underlie both Plaintiff's claim for breach of contract and its claim for breach of the implied covenant, specifically that ATIF failed to pay Boustead the required success fees, the claim for breach of the implied covenant is dismissed as duplicative.

**III.     ATIF's Motion to Dismiss the Tortious Interference with Business Relations Claim is Granted**

To state a claim for tortious interference with business relations under New York law, a plaintiff must allege that: (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted for a wrongful purpose, out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to plaintiff's relationship. *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir. 2006) (citing *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir. 2003)).

Plaintiff alleges that ATIF interfered with Boustead's business relationship with Leaping "by entering into its own financing agreements with Leaping [] despite ATIF's knowledge that Boustead was acting as [Leaping's] exclusive financial advisor," in an effort to "thwart payment by Leaping to Boustead under the Leaping Agreement." Am. Compl. ¶ 66. ATIF argues, *inter alia,* that Plaintiff has failed to allege adequately that it acted solely out of malice, for a wrongful purpose, or with dishonest, unfair or improper means. Def. Mem. of Law, Dkt. 65 at 17. The Court agrees.

The "wrongful means" element of a tortious interference with business relations claim "sets a high bar." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015). In order to satisfy this element, a plaintiff must allege facts from which the Court can plausibly infer that the defendant's conduct amounted to a crime or an independent tort. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012). Although New York courts have recognized an exception to this rule "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs,'" the exception is a narrow one. *16 Casa Duse,* 791 F.3d at 262 (quoting *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190 (2004)). Moreover, when a defendant "has acted with a permissible purpose, such as

13

'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 190.).

Here, Boustead has failed to allege any criminal or tortious conduct by ATIF, *Symquest Grp.,* 186 F. Supp. 3d at 265–66 (dismissing claim because plaintiff failed to allege any "criminal, tortious or other conduct by [the defendant] within the meaning of *Carvel* and its progeny."), and has failed to allege any facts to suggest that ATIF interfered with Boustead's relationship with Leaping for the "sole purpose" of inflicting harm on Boustead, rather than out of ATIF's own "normal economic self-interest," *16 Casa Duse,* 791 F.3d at 262; *see also Abbas v. Martin*, 689 F. App'x 43, 44 (2d Cir. 2017) (dismissing plaintiff's claim for tortious interference because plaintiff had "not plausibly alleged that [defendant's] motivation was devoid of legitimate economic self-interest.") (internal quotation marks and citation omitted). Instead, Plaintiff merely asserts that ATIF "intentionally and in bad faith withheld information concerning its financing agreement with and investment in Leaping Group from Boustead in an attempt to prevent Boustead from obtaining cash and warrant success fees it was due under the Leaping Agreement." Am. Compl. ¶ 67. Such a conclusory allegation is insufficient to allege adequately the third element of a claim for tortious interference with business relations. *See Lesnik v. Lincoln Fin. Advisors Corp.,* No. 18-CV-3656, 2020 WL 3057456, at *3 (S.D.N.Y. June 9, 2020) (dismissing plaintiff's tortious interference with business relations claim because plaintiff "failed to identify conduct that is criminal or independently tortious."); *Carvel Corp.*, 3 N.Y.3d at 190 (dismissing a tortious interference with business relations counterclaim because

plaintiff was acting in its own self-interest rather than "acting solely to hurt [defendant's] fate"). Accordingly, Boustead's claim for tortious interference with business relations is dismissed.[10]

### IV. ATIF's Motion to Dismiss the *Quantum Meruit* Claim is Granted

Finally, Boustead asserts a claim for *quantum meruit* as an alternative way to recover damages if the ATIF Agreement is declared invalid. Specifically, Plaintiff seeks compensation for financial advisory and underwriting services that it allegedly provided to ATIF. Am. Compl. ¶¶ 78–80.

Unjust enrichment and *quantum meruit* are equitable remedies that may be awarded in the absence of an enforceable contract. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 60 (2d Cir. 1997). Where a valid agreement governing the subject matter of the dispute exists, however, "an action in *quantum meruit* to prevent unjust enrichment ordinarily is not available." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006). Although the existence of a contract generally bars recovery based on a quasi-contract theory, a claim for *quantum meruit* "may survive a motion to dismiss where the plaintiff challenges the contract's validity." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 459 (S.D.N.Y. 2016); *Gao v. JPMorgan Chase & Co.*, No. 14-CV-4281, 2015 WL 3606308, at *5 (S.D.N.Y. June 9, 2015) (allowing unjust enrichment claim where plaintiffs brought the claim "in the alternative, alleging that the contract [was] not enforceable"); *Antares Mgmt. LLC v. Galt Glob. Cap., Inc*., No. 12-

---

[10] In its opposition brief, Boustead argues that notwithstanding the heading in its First Amended Complaint that states in bold "Tortious Interference with Business Relations," it is asserting a claim for "tortious interference with contractual relations." *See* Pl. Opp., Dkt. 72. at 15–16. Tortious interference with business relations is a distinct tort from tortious interference with contract. *Valley Lane*, 455 F. App'x at 105-06. As noted *supra*, Plaintiff's claim for tortious interference with business relations is dismissed. Nevertheless, to the extent Plaintiff seeks leave to amend its breach of contract claim, Plaintiff may also seek leave to add a claim for tortious interference with contract. The Court reminds Boustead that it must plead non-conclusory facts to support such a claim, including that ATIF was the "but-for" cause of the alleged breach of the Leaping Agreement. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (holding that to state a claim for tortious interference with contractual relations, a plaintiff must also show that "but for" the actions of the defendant, the contract would have been completed); *see also* Def. Reply, Dkt. 76 at 8.

CV-6075, 2013 WL 1209799, at *12 (S.D.N.Y. Mar. 22, 2013) (allowing an unjust enrichment claim where there was a "bona fide dispute as to the existence of a contract."). When a plaintiff fails to allege that the contract at issue is invalid or unenforceable, however, a claim for *quantum meruit* is precluded. *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (dismissing *quantum meruit* claim on the grounds that plaintiff's "failure to allege that the contracts at issue [were] invalid or unenforceable preclude[d] it, [] from seeking quasi-contractual recovery for events arising out of the same subject matter.").

Here, Boustead alleges that both the ATIF and Leaping Agreements are "valid and enforceable contracts." Am. Compl. ¶ 53. ATIF does not deny that there is a valid contract but merely disputes whether Boustead adequately performed under the Agreement. Def. Mem. of Law, Dkt. 65 at 19–20. Accordingly, because neither Boustead nor ATIF has alleged that the ATIF Agreement is invalid or unenforceable, Plaintiff's *quantum meruit* claim is dismissed. *Compare Air Atlanta Aero Eng'g Ltd.*, 637 F. Supp. 2d at 196 (dismissing Plaintiff's *quantum meruit* claim because plaintiff did not contend that the contract was invalid or unenforceable) *with DeWitt Stern Grp., Inc. v. Eisenberg,* 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014) (allowing unjust enrichment claim to proceed where plaintiff pled that the contract was unenforceable).

## CONCLUSION

For the foregoing reasons, ATIF's motion to dismiss is GRANTED. Plaintiff's Amended Complaint is DISMISSED without prejudice. Because Plaintiff has requested an opportunity to amend its complaint to the extent "the Court deems any of Boustead's allegations deficient," Pl. Opp., Dkt. 72 at 18 n.6, no later than **September 24, 2021,** Plaintiff may move for leave to amend Counts One and Three of the Amended Complaint. Leave to amend the other counts is denied as futile. If Plaintiff chooses to move for leave to amend, it must include a redlined

version of its proposed Second Amended Complaint. ATIF's opposition to the motion for leave to amend is due **October 15, 2021**. Plaintiff's reply is due **October 22, 2021**.

No later than **September 7, 2021**, Plaintiff must move for default judgment against Leaping consistent with the Undersigned's individual practices.

The Clerk of Court is respectfully directed to close the open motion at docket entry 63.

**SO ORDERED.**

Date: **August 25, 2021**
      **New York, New York**

      **VALERIE CAPRONI**
      **United States District Judge**