**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BOUSTEAD SECURITIES, LLC, | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| | § | |
| vs. | § | Civil Action No. 1:20-cv-03749-VEC |
| | § | |
| LEAPING GROUP CO., LTD and | § | |
| ATIF HOLDINGS LIMITED, | § | **SECOND AMENDED COMPLAINT;** |
| Defendants. | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| | § | |
| | § | |
| | § | |

Plaintiff Boustead Securities, LLC ("Plaintiff" or "Boustead"), by their attorneys McGlinchey Stafford, PLLC, make the following Second Amended Complaint against Leaping Group Company, Ltd. ("Leaping Group") and ATIF Holdings Limited ("ATIF") (collectively "Defendants") and states as follows:

**NATURE OF ACTION**

1.      This Action arises from Leaping Group and ATIF's breach of agreements with Boustead pursuant to which Boustead was to act as the exclusive financial advisor for, among other transactions, both Leaping Group and ATIF's initial public offerings ("IPOs") on United States stock exchanges.  Pursuant to these agreements, Leaping Group and ATIF owe Boustead success fees payable in cash and warrants ("Success Fees") based on transactions and equity financing investments completed during the agreements' applicable time periods.

2.      Leaping Group and ATIF entered into a Note Agreement and a Debt Conversion and Share Purchase Agreement with one another, pursuant to which Leaping Group issued a $950,000 note to ATIF under the Note Agreement and Leaping Group issued ordinary shares of its stock to ATIF in exchange for satisfaction of outstanding debt owed to ATIF, along with

2876771.1

1

ordinary shares of ATIF pursuant to the Debt Conversion and Share Purchase Agreement, each an "Equity Investment Transaction" and collectively the "Equity Investment Transactions."

3.      These transactions between Leaping Group and ATIF qualify as "Equity Investment Transactions" pursuant to the terms of Boustead's agreements with Leaping Group and ATIF, entitling Boustead to Success Fees regardless of whether the Leaping Group and ATIF had a general consulting relationship pre-existing their agreements with Boustead.  Neither Leaping Group nor ATIF have paid Boustead the Success Fees owed pursuant to their respective agreements.

4.      Upon information and belief, including relevant filings with the United States Securities and Exchange Commission (the "SEC"), Leaping and/or ATIF may have engaged in other transactions during the term and the "tail" period set forth in the agreements for which they owe Boustead Success Fees.  By this Action, Boustead seeks to recover all Success Fees it is owed from the Defendants.

## PARTIES

5.      Plaintiff Boustead Securities, LLC is a California limited liability company with a principal place of business located at 6 Venture, Suite 395, Irvine, California.

6.      Defendant Leaping Group Company, Ltd. is a Cayman Islands limited liability exempt company with a principal place of business located at 2010 Huaruntiexi Center, Tiexi District, Shenyang, Liaoning Province, People's Republic of China.

7.      Defendant ATIF Holdings Limited is a Chinese limited liability company with a principal place of business located at Room 308, Dachong International Centre, 39 Tonggu Road, Nashan District, Shenzhen, People's Republic of China.

2876771.1

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this Action involves (a) citizens of a state and citizens or subjects of different foreign states and (b) the amount in controversy exceeds $75,000.

9.      Venue is proper in this Court under 28 U.S.C. § 1391 because the terms of the contract at issue between Boustead and Leaping Group stipulates that venue for any action arising out of the agreement is proper in the United States District Court for the Southern District of New York.

10.     This Court has personal jurisdiction over Leaping Group because this Action (and the alleged wrongful acts and injuries) arises directly from an agreement Leaping Group signed with Boustead that contemplates suit in the United States and consents to this Court's jurisdiction. Leaping Group also has a presence in the United States and has engaged in continuous and systemic business in the State of New York.

11.     The Court has personal jurisdiction over ATIF which is an SEC public reporting company with shares trading on the NASDAQ Capital Market under the symbol "ATIF."  ATIF also has had substantial, systemic and continuous contact with the State of New York.

12.     Boustead has effected service of process on ATIF pursuant to the Court's Order granting service by alternative means.   Boustead served Leaping through the Hague Convention (*see* Docket Entries 81, 91).

## GENERAL ALLEGATIONS

### The Parties' Backgrounds

13.     Boustead is a broker/dealer and investment banking and financial consulting firm registered with the SEC and is a member of the Financial Industry Regulatory Authority ("FINRA") that specializes in assisting U.S. domestic and Chinese companies with raising capital,

2876771.1

conducting mergers and acquisitions, accessing United States equities markets, and obtaining listings on regulated United States stock exchanges.

14.     Leaping Group is a Chinese multimedia marketing company that specializes in movie trailers, commercials and multimedia marketing, invests in television and film original content, and manages movie theaters in northeastern China.

15.     ATIF is a consulting company offering financial advisory services to small and medium-sized enterprise customers in China.  The focus of ATIF's consulting business is providing going-public consulting services to help its clients become publicly-traded on suitable markets and exchanges.

16.     In May 2018, ATIF and Leaping entered into a Consulting Agreement to provide support services around a potential public offering in the United States, which Leaping hired Boustead to underwrite.

17.     According to the agreement, ATIF specifically disclaims that, unlike Boustead, it is "not in the business of stock brokerage, investment advisory, underwriting, banking or insurance, nor will it provide any services which may require a registration or is subject to regulations under any applicable laws."  (Underline in Original).  ATIF agreed to assist Leaping with "due diligence," "Identifying suitable qualified professional firms in the United States," "work with other professionals,"  Identify "potential employees," and "assist" Leaping with "public reporting requirements."

18.     Nothing in the Consulting Agreement provides that ATIF would assist Leaping or participate with Leaping to raise capital or otherwise advise on financial transactions.  Indeed, the agreement explicitly states the opposite is true.

**Boustead's Agreement with Leaping Group**

19.    On or about October 17, 2018, Boustead and Leaping Group entered into an exclusive financial advisor engagement agreement ("Leaping Agreement") in anticipation of Leaping Group's planned IPO and pre-IPO financings, along with other transactions.  The Leaping Agreement, unlike the ATIF Consulting Agreement, contemplates that Boustead would be provided financial services designed to underwrite a public offering or otherwise facilitate fund raising transactions.  A true and correct copy of the Leaping Agreement is attached hereto as Exhibit A.

20.    Section 2 of the Leaping Agreement provided that Boustead was to be paid a cash success fee of 6.5% of any amounts raised by Leaping Group through the "Equity Investment Transaction," plus warrants equal to a number of shares calculated as 6.5% of the gross amount disbursed to Leaping Group divided by the price per share for the Equity Investment Transaction, through each such Equity Investment Transaction.  *Id*.

21.    Under the Leaping Agreement, the definition of a "Transaction" includes: "any common stock, preferred stock convertible stock, LLC or LP Memberships, convertible debentures, convertible debt, debt with warrants or any other securities convertible into common stock, any form of debt instrument involving any form of equity participation, and including the conversion or exercise of any securities sold in any Transaction."  *Id.*

22.    The Leaping Agreement provided Boustead with the right of first refusal for two (2) years from the consummation of a Transaction or termination or expiration of the Leaping Agreement to act as Financial Advisor or to act as joint Financial Advisor on at least equal economic terms on any public or private financing (debt or equity), merger, business combination,

recapitalization, or sale of some or all of the equity or assets of Leaping Group (collectively "Future Services").

23.     Paragraph 6 of the Leaping Agreement provides that

In addition, upon termination or expiration of this Agreement, Boustead shall be entitled to a Success Fee(s), as defined above, *if the Company [Leaping] completes a Transaction with a party, which became aware of the Company or which became known to the Company prior to such termination . . . during the twelve (12) month period following the termination or expiration of this Agreement.*

(Exhibit A at 4) (Emphasis added) ("Success Fee Provision").

24.     Leaping Group and ATIF entered the Equity Investment Transactions and neither party provided Boustead notification of the Future Services related to the Equity Investment Transactions. Under the Future Services provision of the Leaping Agreement Boustead is to be compensated consistent with Section 2 of the Leaping Agreement, unless mutually agreed otherwise by Leaping Group and Boustead. *Id.*

25.     Further, given the interrelated dealing among Leaping and ATIF, both of which had agreements with Boustead and all of whom were working towards a Leaping Group IPO. In other words, Leaping Group and ATIF were both aware of Boustead and its respective agreements with the other.

26.     The Parties agreed to extend the Offering Period for an additional 60 days until August 17, 2020. A true and correct copy of the Extension Agreement is attached hereto as Exhibit B.

27.     Further, the Extension Agreement between Boustead and Leaping Group stipulated that any action, proceeding or claim arising from the Leaping Agreement would be brought in the state courts of New York or the United States District Court for the Southern District of New York. See Exhibit B.

2876771.1

6

28.     On September 24, 2019, Boustead and Leaping Group entered into a First Amendment to Engagement Agreement, pursuant to which the term of the Leaping Agreement was extended from twelve (12) months to *twenty (20) months* (or until May 17, 2020).  As a result of this amendment, the Leaping Agreement's tail expiration date was extended to on or about May 17, 2021.  The Equity Investment Transactions were completed by Leaping Group and ATIF prior to the expiration of the Leaping Agreement.  A true and correct copy of the First Amendment is attached hereto as Exhibit C.

**Boustead's Agreement with ATIF**

29.     On or about September 4, 2018, Boustead and ATIF entered into an exclusive financial advisor engagement agreement (the "ATIF Agreement") pursuant to which Boustead would act as ATIF's exclusive financial advisor in connection with ATIF's application for listing on NASDAQ or the New York Stock Exchange.  A true and correct copy of the ATIF Agreement is attached hereto as Exhibit D.  Notably, the ATIF Agreement also contains a "Success Fee Provision" similar to the Leaping Agreement:  "if the Company [ATIF] completes a Transaction with a party, which became aware of the Company or which became known to the Company prior to such termination . . . during the twelve (12) month period following the termination or expiration of this Agreement."

30.     Per Section 2 of the ATIF Agreement provided that Boustead was to be paid a cash success fee of 6.5% of any amounts raised by ATIF through the "Equity Investment Transaction", plus warrants equal to a number of shares calculated as 6.5% of the gross amount disbursed to ATIF divided by the price per share for the Equity Investment Transaction, through each such Equity Investment Transaction.  *Id*.

31.     Under the ATIF Agreement, the definition of "Transaction" includes: "any common stock, preferred stock convertible stock, LLC or LP Memberships, convertible debentures, convertible debt, debt with warrants or any other securities convertible into common stock, any form of debt instrument involving any form of equity participation, and including the conversion or exercise of any securities sold in any Transaction." *Id.*

32.     On April 23, 2019, Boustead and ATIF entered into an "Amendment No. 1 to Engagement Letter" which amended the success fee due to Boustead to a cash success fee of 6.5% of the first $10,000,000 in equity investment Transactions and 6% of any amount in excess thereof, and warrants equal to 6.5% of the gross amounts disbursed for each equity investment transaction, exercisable at a strike price equal to one hundred and twenty percent (120%) of the offering price for ATIF's ordinary shares for the proposed IPO.  A true and correct copy of Amendment No. 1 to Engagement Letter is attached hereto as Exhibit E.

33.     On or about May 3, 2019, ATIF's IPO Registration Statement with the SEC became effective and its ordinary shares began trading on the NASDAQ securities market under the ticker "ATIF."  ATIF's offering price at the time of the IPO was $5.00 per ordinary share, and as of November 6, 2020, ATIF's ordinary shares were trading at approximately $0.67 per share on NASDAQ.

**Relationship Between Leaping Group and ATIF**

34.     On December 18, 2018, Leaping Group and ATIF entered into another Consulting Agreement, which is substantially similar to the May 2018 Consulting Agreement between the parties described above.  Again, ATIF's contemplated services under the Agreement were not financial consulting in nature.  A true and correct copy of this additional Consulting Agreement between Leaping Group and ATIF is attached hereto as Exhibit F.

2876771.1

35.    Under the December 18, 2018 Consulting Agreement, ATIF was entitled to payments from Leaping Group under the Consulting Agreement in three installments of: (1) $468,000 paid within three days of the Consulting Agreement's effectiveness; (2) $468,000 to be paid upon completion of the restructuring and commencement of SEC filings for Leaping Group's IPO; and (3) $564,000 upon receipt of SEC documents for Leaping Group's IPO. *Id*.

36.    On December 3, 2019, Leaping Group and ATIF entered into a First Amendment to Amended and Restated Consulting Agreement, pursuant to which the remaining $1,435,000 owed by Leaping Group to ATIF under the Consulting Agreement would be paid as: (1) $200,000 in cash at the close of Leaping Group's IPO; and (2) $1,235,000 worth of Leaping Group ordinary shares to ATIF at the IPO price.  A true and correct copy of the First Amendment to Amended and Restated Consulting Agreement is attached hereto as Exhibit G.

37.    The First Amendment to Amended and Restated Consulting Agreement further provided that if the Leaping Group IPO does not close by December 31, 2021, the unpaid remaining balance of the $1,435,000 owed by Leaping Group to ATIF would be paid in cash and become due on January 1, 2022.  *Id*.

38.    On January 20, 2020, ATIF provided a $950,000 loan to Leaping Group and its subsidiary.  Neither Leaping Group nor ATIF informed Boustead of this loan, and Boustead did not learn of the loan until ATIF disclosed it as part of its April 8, 2020 Form 6-K filing with the SEC.  Although required by securities laws to report such material events within four days of their occurrence, neither ATIF nor Leaping Group disclosed this loan in any of their respective SEC filings until April 8, 2020, more than two and a half months after the loan was made.

39.    On February 11, 2020, Leaping Group and ATIF entered into a Second Amendment to Amended and Restated Consulting Agreement, amending the terms of the consulting payments

owed by Leaping Group to ATIF to: (1) $200,000 in cash at the time of the closing of Leaping Group's IPO; and (2) 300,000 five-year warrants for Leaping Group ordinary shares with an exercise price at the IPO offering price. A true and correct copy of the Second Amendment to Amended and Restated Consulting Agreement is attached hereto as Exhibit H.

**Leaping Group Withdraws its IPO and Enters into**
**Debt Conversion Share Purchase Agreement With ATIF**

40.    On March 13, 2020, Leaping Group withdrew its registration statement with the SEC for its planned IPO. Leaping Group further stated in its application for withdrawal that it "may undertake a subsequent private offering."

41.    On April 23, 2020, ATIF filed a Form 6-K with the SEC that disclosed that it had acquired approximately 51.2% of the issued and outstanding shares of Leaping Group through a (1) debt conversion and share purchase agreement; and (2) a share exchange agreement that ATIF had entered into with Leaping Group and its shareholders.

42.    Under the terms of the debt conversion and share purchase agreement between ATIF and Leaping Group, ATIF was issued 3,934,029 ordinary shares of Leaping Group in exchange for: (1) satisfaction of the $1,851,000 outstanding debt owed to ATIF by Leaping Group; and (2) the issuance of 2,800,000 ordinary shares of ATIF to Leaping Group.

43.    The $1,851,000 in outstanding debt owed to ATIF by Leaping Group that was converted to ordinary shares of Leaping Group pursuant to the debt conversion and share purchase agreement included the $950,000 loan made by ATIF to Leaping Group on January 20, 2020.

44.    Under the terms of the share exchange agreement, the shareholders of Leaping Group assigned an aggregate of 6,283,001 ordinary shares of Leaping Group to ATIF in exchange for an aggregate of 7,140,002 ordinary shares of ATIF.

45.    The share exchange agreement extinguished Leaping Group's outstanding shares and Leaping Group became a wholly-owned subsidiary of ATIF. ATIF dominates and controls Leaping Group such that ATIF and Leaping Group are alter egos.

46.    For example, public documents filed with the SEC including ATIF's April 23, 2020 Form 6-K disclosing its investment in Leaping Group include statements from Leaping Group such as: "[w]e are excited about partnering with ATIF Holdings Limited and will stand up together to face the challenges and opportunities brought by COVID-19 pandemic."

47.    ATIF's public statements made in connection with its investment in Leaping Group include: "[w]e are thrilled to complete the acquisition of a controlling interest in [Leaping Group]. [Leaping Group] is a well-established multimedia industry leader with additional appraisal and development upside. The acquisition will expand our capacity to meet increasing demand for multimedia industry and diversify our portfolios. Looking ahead, we will continue to implement ATIF's growth strategy to create value for our shareholders."

**Leaping Group and ATIF Fail to Pay Boustead Success Fees and Warrants Owed**

48.    The debt conversion and share purchase agreement between ATIF and Leaping Group and the share exchange agreement between ATIF and Leaping Group's shareholders qualify as "Equity Investment Transactions" under the terms of Boustead's agreements with Leaping Group and ATIF.

49.    Pursuant to its agreement with Boustead, Leaping Group is obligated to pay Boustead a success fee in the amount of 6.5% of the total value of (1) the $1,851,000 in debt satisfaction by ATIF, (2) the 2,800,000 ordinary shares of ATIF it received pursuant to the debt conversion and share repurchase agreement, (3) the 7,140,000 ATIF ordinary shares received by Leaping Group selling shareholders, and (4) the $950,000 convertible note from Leaping Group

to ATIF. Leaping Group is also obligated to provide Boustead with warrants equal to a number of shares calculated as 6.5% of the gross amount distributed to Leaping Group divided by the price per share for the Transaction.

50.     Pursuant to its agreement with Boustead, ATIF is obligated to pay Boustead a success fee in the amount of 6.5% of the total value of (1) the 3,934,029 Leaping Group ordinary shares received by ATIF and (2) the 6,283,011 Leaping Group ordinary shares received from Leaping Group selling shareholders. ATIF is also obligated to provide Boustead with warrants equal to a number of shares calculated as 6.5% of the gross amount distributed to ATIF divided by the price per share for the Transaction.

51.     Upon information and belief, both Leaping Group and ATIF have entered into additional undisclosed Transactions both with each other and with third parties. Boustead may also be entitled to cash and/or warrant success fee(s) from these Transactions, and Boustead reserves the right to amend its complaint and seek such other and further relief as appropriate.

**Boustead Fully Performed and Satisfied Conditions Under the Leaping Agreement**

52.     Pursuant to the parties' Agreement, Boustead performed the following tasks for Leaping and its initial public offering, of which Leaping withdrew its registration statement with the SEC for its planned initial public offering after ATIF began publicly trading on the NASDAQ on May 3, 2019 and, thereafter, entered into its Debt Conversion Share Purchase Agreement with ATIF:

A.     Boustead assembled an experienced in-house investment banking team to support the Leaping engagement.

B.     Boustead engaged Ortoli Rosenstadt LLP to represent Boustead as underwriter legal counsel.

2876771.1

C.    Boustead engaged Albeck & Company, a third-party due diligence consultant, to conduct due diligence on Leaping which culminated in their producing a 43 page due diligence report.

D.    Boustead engaged third-party background check consultant, vCheck Global, to conduct background checks on the following Leaping officers: Jiang Bo, Jiang Tao, and Xu Ziwe.

E.    Boustead conducted its own due diligence on the following Leaping officers and directors:  Jiang Bo, Jiang Tao, Xu Ziwe, Dennis Burns, Christopher Kohler, Xin (Adam) He, and Douglas Menelly. Included in the due diligence of the officers and directors is a 35 page detailed questionnaire of the officers and directors' education, work experience, compensation, equity arrangements, payments made, other directorships, FINRA member affiliations, and other agreements with Leaping.

F.    Boustead also conducted extensive due diligence on Leaping's business, including the following:  review of entity formation documents, review of board minutes and board consents, reviewing the business prospects of Leaping, reviewing tangible and intangible assets of Leaping, reviewing insurance policies, reviewing Leaping's ongoing legal proceedings, reviewing required business licenses and permits, reviewing contracts, reviewing numerous financial models of Leaping and testing their assumptions against historical results, reviewing numerous historical financial statements of Leaping, and performing a detailed pricing analysis of Leaping's common stock.

G.    Boustead advised Leaping on the offering structure, terms and items of disclosure in Leaping's registration statement filings.  As part of such advisory services, Boustead reviewed and commented on numerous SEC filings by Leaping, including the following:

- November 1, 2018:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420418056776/filename1.htm

- December 17, 2018:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420418064809/filename1.htm

- January 2, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419000180/tv509695_f1.html

- March 8, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419012968/tv510373-f1a.htm

- March 22, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419015515/tv515900-424b4.htm

- August 12, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419039221/tv527243-posam.htm

- August 16, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419040354/tv527749-424b3.htm

- September 30, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419046510/tv530213-posam.htm

- October 9, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000114420419047739/tv530783-424b3.htm

- October 17, 2019:
  https://www.sec.gov/Archives/edgar/data/1757083/000110465919054701/tv531068-posam.htm

    H. Boustead also reviewed and commented on numerous versions of Leaping's

investor PowerPoint which culminated in the Leaping "Free Writing Prospectus" filed with the

SEC on March 20, 2019, and filing the updated Free Writing Prospectus on April 11, 2019 and

November 20, 2019, respectively.

2876771.1

14

I. Boustead further submitted numerous filings to FINRA for each version of Leaping's registration statement noted above and Boustead worked with FINRA to ultimately receive FINRA's approval (known as a "No Objection Letter") for Boustead to conduct the IPO on behalf of Leaping. For IPOs in which a FINRA member underwriter, such as Boustead, is engaged, the SEC will not declare a company's registration effective unless such underwriter has received a FINRA No Objection Letter. FINRA issued a No Objection Letter with respect to Leaping dated March 20, 2019.

J. Boustead also worked with Leaping management and its counsel on the NASDAQ listing application, providing support for items requested by NASDAQ and providing NASDAQ with a "Plan of Distribution" letter as further support for Leaping's Nasdaq listing application. Nasdaq will not list a company without an underwriter, such as Boustead, providing a Plan of Distribution letter.

K. Boustead, through its legal counsel, negotiated legal opinions for the IPO with Leaping legal counsels, including: Dentons (PRC Counsel) and Ogier (British Virgin Islands Counsel).

L. On September 27, 2019, Boustead requested and reviewed supplemental due diligence information from Leaping concerning agreements in connection with multi-channel advertisement business and, specifically, advertising services with Wanda, Focus Film, and 14 supermarkets, leases in connection with three movie theaters in Shenyang and a fourth movie theater to be opened, theater chain agreements with Liaoning North Cinema Line Co., Ltd., headquarter lease agreement, offer letters to independent director nominees, and employment and indemnification agreement with existing directors and officers.

2876771.1

M.      Boustead also provided the Leaping registration statement "Acceleration Request" to the SEC for Leaping's registration statement.

N.      To facilitate the above, Boustead hosted numerous calls with relevant participants.

O.      Boustead engaged the following as selling group members to help place the IPO:  Xinjiang Herounited Co. Ltd. (a non-U.S. underwriter) and Valuable Capital, LLC (a non-US underwriter).

Q.      Boustead negotiated the Offering Deposit Agreement dated October 17, 2018 with FinTech Clearing, LLC for the deposit of investors' funds.  Ultimately, as a result of Leaping filing the withdrawal of its Registration Statement, Boustead facilitated the return of all investor funds.

53.      The foregoing list is non-exhaustive. With Boustead's assistance per the parties' agreement, Leaping's planned IPO was staged, notwithstanding that it was withdrawn and Leaping entering into its Debt Conversion Share Purchase Agreement, and FINRA approval was obtained in connection with Leaping's planned IPO.  As such, Boustead fulfilled its obligations under the Leaping Agreement.

**Boustead Fully Performed and Satisfied Conditions Under the ATIF Agreement**

54.      Pursuant to the parties' Agreement, Boustead performed the following tasks for ATIF and its initial public offering, which ultimately culminated in ATIF publicly trading on the NASDAQ on May 3, 2019:

A.      Boustead assembled an experienced in-house investment banking team to support the ATIF engagement.

B.      Boustead engaged Ortoli Rosenstadt LLP to represent Boustead as

underwriter legal counsel.

       C.    Boustead engaged Albeck & Company, a third-party due diligence consultant, to conduct due diligence on ATIF which culminated in their producing a 41 page due diligence report.

       D.    Boustead engaged third-party background check consultant, vCheck Global, to conduct background checks on the following ATIF officers: Fang Cheng, Quang Chen and Ouili Wang.

       E.    Boustead conducted its own due diligence on the following ATIF officers and directors:  Fang Cheng, Quang Chen, Ouili Wang, Kwong Sang Liu, Longdley Zephirin,  and Yongyuan Chen. Included in the due diligence of the officers and directors is a 35 page detailed questionnaire of the officers and directors' education, work experience, compensation, equity arrangements, payments made, other directorships, FINRA member affiliations, and other agreements with ATIF.

       F.    Boustead also conducted extensive due diligence on ATF's business, including the following:  review of entity formation documents, review of board minutes and board consents, reviewing the business prospects of ATIF, reviewing tangible and intangible assets of ATIF, reviewing insurance policies, reviewing ATIF's ongoing legal proceedings, reviewing required business licenses and permits, reviewing materials contracts, reviewing numerous financial models of ATIF and testing their assumptions against historical results, reviewing numerous historical financial statements of ATIF, and performing a detailed pricing analysis which culminated in the pricing of ATIF's common stock at $5 per share for the IPO.

       G.    Boustead also negotiated "Lock-Up" agreements with key shareholders including:  Xueqing Liu,  Renyan Ou, Great State Investments Limited, Tianzhen Investments

2876771.1

17

Limited, Ronghua Liu, and Eno Group Limited.

> H.    Boustead advised the company on the offering structure, terms and items of disclosure in ATIF's registration statement filings.  As part of such advisory services, Boustead reviewed and commented on numerous SEC filings by ATIF, including the following:

- October 15, 2018:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420418053698/filename1.htm

- November 28, 2018:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420418061810/filename1.htm

- December 11, 2018:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420418064104/tv508030-f1.htm

- December 17, 2018:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420418064914/tv509000-f1a.htm

- February 12, 2019:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420419006630/tv512956_424b4.htm

- March 11, 2019:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420419013285/tv509344-posam.htm

- March 15, 2019:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420419014375/tv516072-424b3.htm

- April 16, 2019:
  https://www.sec.gov/Archives/edgar/data/1755058/000114420419019928/tv519019-424b3.htm

> I.    Boustead also reviewed and commented on numerous versions of ATIF's investor PowerPoint which culminated in the ATIF "Free Writing Prospectus" filed with the SEC on March 19, 2019.

J.      Boustead further submitted numerous filings for each version of ATIF's registration statement noted above to FINRA and worked with FINRA to ultimately receive FINRA's approval for Boustead to conduct the IPO on behalf of ATIF.   For IPOs in which a FINRA member underwriter, such as Boustead, is engaged, the SEC will not declare a company's registration effective unless such underwriter has received FINRA approval.  In connection with Boustead's efforts to obtain FINRA approval, and after Boustead submitted the ATIF Agreement for approval, FINRA issued a "No Objections Letter" dated February 6, 2019 approving the ATIF IPO and, thus, the Success Fee payment due under the ATIF Agreement.

K.      Boustead also worked with ATIF management and its counsel on the NASDAQ listing application, providing support for items requested by NASDAQ and providing NASDAQ with a "Plan of Distribution" letter as further support for ATIF's Nasdaq listing application.  Nasdaq will not list a company without an underwriter, such as Boustead, providing a Plan of Distribution letter.

L.      Boustead, through its legal counsel, negotiated legal opinions for the IPO with ATIF legal counsels, including: Hunter Taubman Fischer & LI LLC (US Securities Counsel) Dentons (PRC Counsel), and Ogier (British Virgin Islands Counsel).

M.      On April 17, 2019, Boustead requested and reviewed supplemental due diligence information from ATIF concerning foreign registrations, equity transfer agreements between insiders, declarations of trust, trademark and other registration information.

N.      Boustead also provided the ATIF registration statement "Acceleration Request" to the SEC for ATIF's registration statement.

O.      On April 25, 2019, Boustead conducted a further due diligence review and hosted a call with ATIF management and their securities, BVI and PRC counsel, ATIF auditors along with Boustead's securities counsel.

P.      Boustead engaged the following fellow as selling group members to help place the IPO:  Westpark Capital, Inc. ( a FINRA member) and Valuable Capital, LLC (a non-US underwriter).

Q.      Boustead conducted an investor "Road Show" with ATIF officers making investor presentations.

R.      Between April 23 and April 29, 2019, Boustead hosted numerous closing calls with ATIF management, ATIF BVI, PRC and Boustead Securities counsels, ATIF auditors, ATIF's transfer agent and the escrow agent for the closing of the IPO.

55.      The foregoing list is non-exhaustive. With Boustead's assistance per the parties' agreement, ATIF offered shares to the public and Boustead and its selling group members solicited investors for the ATIF shares which culminated in the ATIF shares trading on NASDAQ on May 3, 2019.

56.      As explained above, as a necessary part of that process, FINRA approval of terms of the ATIF Agreement was required and obtained.  In short, Boustead fulfilled its obligations under the ATIF Agreement.

### COUNT I – BREACH OF CONTRACT
**(Against Leaping Group and ATIF)**

57.      Plaintiff incorporates each of the allegations above as if set forth herein.

58.      Both Leaping Group and ATIF entered into valid and enforceable contracts with Boustead.

2876771.1

20

59.    As described in paragraphs 52 through 56 (including subparts), Boustead performed all of its obligations pursuant to its contracts with Leaping Group and ATIF, which included but are not limited to, financial advising, underwriting services and other activities as specifically described in the parties' respective agreements, which are attached as Exhibits hereto.

60.    Leaping Group and ATIF have both breached their contracts with Boustead by failing to pay Boustead success fees and warrants owed pursuant to the terms of the contracts, including in connection to the transactions between Leaping and ATIF described above.

61.    As a result, Boustead has been damaged by Leaping Group's and ATIF's breaches of their contracts with Boustead.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons and after a trial on the merits, Boustead requests that the Court grant the following relief:

(a) Enter judgment in Boustead's favor;

(b) Grant Boustead all damages to which it is entitled under law; and

(c) Such other and further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**


Dated: November 5, 2021
       New York, New York

McGLINCHEY STAFFORD PLLC


By: /s/Dennis A. Amore_____ _____
Jack I. Siegal, Esq., *pro hac vice*
Jameson Pasek, Esq., *pro hac vice*
One Boston Place, Suite 2910
Boston, MA 02108
Tel: (857) 453-7152
Fax: (617) 830-8385
jsiegal@mcglinchey.com

2876771.1

jpasek@mcglinchey.com

Dennis A. Amore, Esq.
112 West 34th Street, Suite 1515
New York, NY 10120
Tel: (646) 362-4000
Fax: (646) 219-2145
Email: damore@mcglinchey.com
*Attorneys for Plaintiff Boustead Securities,*
*LLC*

2876771.1