```
                                                              USDC SDNY
                                                              DOCUMENT
                                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                  DOC #:
SOUTHERN DISTRICT OF NEW YORK                                 DATE FILED: 7/6/2022
```

------------------------------------------------------------X
BOUSTEAD SECURITIES, LLC,                       :
                                                :
                        Plaintiff,              :
                                                :       20-CV-3749
        -against-                               :
                                                :       OPINION AND ORDER
LEAPING GROUP CO., LTD AND ATIF                 :
HOLDINGS LIMITED,                               :
                                                :
                        Defendants.             :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Boustead Securities, LLC ("Boustead") brings this action against Defendants ATIF Holdings Limited ("ATIF") and Leaping Group Co., Ltd. ("Leaping") for breach of contract. *See generally* Second Am. Compl., Dkt. 115. ATIF moved to dismiss the Second Amended Complaint ("SAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). Def. Mem., Dkt. 119. For the following reasons, ATIF's motion to dismiss is DENIED.

## BACKGROUND

In May 2018, Defendants ATIF and Leaping[1] entered into a Consulting Agreement pursuant to which ATIF would provide support services (e.g., due diligence, identification of professional firms) in connection with Leaping's potential public offering in the United States, which Leaping hired Plaintiff Boustead to underwrite. Second Am. Compl. ¶¶ 16–17.

---

[1] Defendant Leaping is party to the Second Amended Complaint, but it has not moved to dismiss. This opinion, therefore, only addresses Plaintiff's claim against Defendant ATIF.

1

On or around September 4, 2018, Plaintiff entered into an exclusive financial advisor agreement with ATIF. *Id.* ¶ 29. Plaintiff was to act as ATIF's exclusive financial advisor in connection with ATIF's application for listing on NASDAQ or the New York Stock Exchange (the "ATIF Agreement"). *Id*. Thereafter, on or around October 17, 2018, Plaintiff entered into an exclusive financial advisor engagement agreement with Leaping (the "Leaping Agreement"). *Id.* ¶ 19. Pursuant to the Leaping Agreement, Plaintiff was to act as an underwriter for Leaping's initial public offering as well as to facilitate fund raising transactions. *Id*. Plaintiff alleges that ATIF and Leaping were aware of the other's agreement with Boustead. *Id.* ¶ 25.

Plaintiff's agreements with Leaping and ATIF each included a twelve-month tail period, a Future Services provision, and a Success Fee provision for all Equity Investment Transactions ("EIT"). *Id*. ¶¶ 22–23, 29. Both the ATIF Agreement and the Leaping Agreement define an EIT, or "Transaction," as "any common stock, preferred stock convertible stock, LLC, or LP Memberships, convertible debentures, convertible debt, debt with warrants or any other securities convertible into common stock, any form of debt instrument involving any form of equity participation, and including the conversion or exercise of any securities sold in any Transaction." *Id*. ¶¶ 21, 31.

The Future Services provision provided Plaintiff with a right of first refusal to act as a Financial Advisor for two years after the consummation of a Transaction or termination or expiration of the Agreement. *Id.* ¶ 22; Def. Mem. at 5. The Success Fee provision provided that Plaintiff was to be paid cash plus warrants for any amount raised through an EIT. Second Am. Compl. ¶¶ 20, 30. The twelve-month tail period entitled Plaintiff to Success Fees if ATIF entered into a Transaction with a third party that became known to ATIF, or a third party that became aware of ATIF, prior to the termination or expiration of the ATIF Agreement. *Id.* ¶ 29;

Def. Mem. at 4. The ATIF Agreement conditioned payment of Success Fees on approval by the Financial Industry Regulatory Authority ("FINRA") for Plaintiff to conduct the IPO on ATIF's behalf.[2] Def. Mem. at 11; *see also* Second Am. Compl. ¶ 56.

On February 6, 2019, Plaintiff obtained FINRA approval for the underwriting terms in its Agreement with ATIF. Second Am. Compl. ¶ 54. On April 23, 2019, Plaintiff and ATIF amended their agreement. Pl. Opp., Dkt. 120 at 4–5. The Amendment altered the Success Fee and removed the Future Services provision, but it kept the twelve-month tail provision intact. *Id.*; *see also* Def. Mem. at 5. On May 3, 2019, ATIF's shares began trading on the NASDAQ. Second Am. Compl. ¶ 33.

On March 13, 2020, Leaping withdrew the registration statement for its planned IPO. *Id.* ¶ 40. Then, on or around April 23, 2020, ATIF acquired a majority stake in Leaping Group through a (1) Debt Conversion and Share Purchase Agreement; and (2) a Share Exchange Agreement (hereinafter, the "ATIF-Leaping Transactions"). *Id.* ¶ 41.[3]

On December 28, 2021, Plaintiff filed its Second Amended Complaint, asserting claims against ATIF and Leaping for breach of contract.[4] *Id.* ¶¶ 1–4. Plaintiff alleges that the ATIF-

---

[2] FINRA is a self-regulatory organization that oversees broker-dealers. *About Finra*, FINRA, https://www.finra.org/about (last visited June 7, 2022). As a FINRA member, Plaintiff is subject to FINRA rules. Def. Mem. at 11 n.7. Defendant ATIF separately asserts that Plaintiff failed to satisfy or violated several FINRA rules, *id.* at 11 n.7; those alleged violations are not directly relevant to this Motion.

[3] Through the debt conversion and share purchase agreement, 3,934,029 ordinary shares of Leaping were issued to ATIF in exchange for (1) satisfaction of $1,851,000 outstanding debt owed by Leaping; and (2) the issuance of 2,800,000 ordinary shares of ATIF to Leaping. Second Am. Compl. ¶ 42. Through the share exchange agreement, the shareholders of Leaping assigned an aggregate of 6,283,001 ordinary shares to ATIF in exchange for an aggregate of 7,140,002 ordinary shares of ATIF. *Id.* ¶ 43.

[4] Plaintiff originally commenced this lawsuit on May 14, 2020 against ATIF and Leaping, alleging: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference with business relations, and (4) quantum meruit. Compl., Dkt. 5. After ATIF moved to dismiss, Plaintiff amended its complaint. *See* Am. Compl., Dkt. 53. On December 8, 2020, ATIF again moved to dismiss, and on August 25, 2021, the Court granted the motion, dismissing Plaintiff's claims without prejudice to amend the complaint to allege adequately its own performance and plead satisfaction of all conditions precedent. Order, Dkt. 82. On September 7, 2021, Plaintiff moved for default judgment against Leaping. *See* Dkt. 93. On October 15, 2021, this Court held Plaintiff's motion for default judgment against Defendant Leaping in abeyance. Order, Dkt. 102 at 1.

Leaping Transactions qualify as EITs under Plaintiff's Agreements with ATIF and Leaping. *Id.* ¶ 48. Plaintiff alleges that Leaping and ATIF both breached their respective agreements with Plaintiff by failing to pay Plaintiff cash and warrants for the ATIF-Leaping Transactions, thereby violating the Success Fee provision found in both the ATIF and Leaping Agreements. *Id.* ¶ 60. Plaintiff also alleges that ATIF and Leaping have entered into additional undisclosed transactions with each other and with third parties for which Plaintiff claims it is entitled to compensation. *Id.* ¶ 51.

Defendant ATIF has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Def. Mem. Defendant argues that Plaintiff failed to plead that it obtained FINRA approval, an essential condition precedent for it to be entitled to Success Fees under the ATIF Agreement. *Id.* at 11. Defendant also argues that even if Plaintiff adequately pled all conditions precedent, Plaintiff failed adequately to plead its own performance because, although Plaintiff alleged performance in relation to ATIF's IPO, it did not allege performance with respect to the ATIF-Leaping Transactions. *Id.* at 15–16. Consequently, Defendant moves for dismissal of Plaintiff's SAC. *Id.* at 1.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

4

The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

**I.  ATIF's Motion to Dismiss the Breach of Contract Claim Is Denied**

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the "plain language" of the contract contradicts or fails to support the plaintiff's allegations of breach. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156–58 (2d Cir. 2016). Otherwise, any contractual ambiguities must be resolved in the plaintiff's favor. *Subara Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). Contractual terms are unambiguous if they have "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).

Plaintiff alleges that ATIF breached the ATIF Agreement by failing to pay Plaintiff the required Success Fees stemming from the ATIF-Leaping Transactions. Second Am. Compl. ¶ 60. Defendant argues that Plaintiff has failed to allege adequately its own performance under the

5

ATIF Agreement or the performance of all conditions precedent.  Def. Mem. at 1.  The Court disagrees.

### A. Plaintiff Has Alleged Adequately Its Own Performance

It is well-settled that a plaintiff must plead more than a mere "formulaic recital of the required elements of a cause of action" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 545.  As such, in the context of a breach of contract claim, a plaintiff must allege, *inter alia*, sufficient factual matter from which the Court can infer that the plaintiff performed under the relevant agreement.  *Id.*; *Uncas Int'l LLC v. Crimzon Rose, Inc.*, 2017 WL 2839668, at *3 (S.D.N.Y. June 26, 2017) ("Pleading of a plaintiff's own performance is subject to the same pleading standard as other allegations, i.e., the plausibility requirement set out in *Iqbal*.").

Applying that standard, Plaintiff has plausibly pled its own performance.  In the SAC, Plaintiff alleges specific actions it took pursuant to the ATIF Agreement, including "review of entity formation documents, review of board minutes and board consents, reviewing the business prospects of ATIF," negotiation of agreements "with key shareholders," advisory services "on the offering structure, terms and items of disclosure in ATIF's registration statement filings," "review[] and comment[] on numerous versions of ATIF's investor PowerPoint," engaging third-party firms and "an experienced in-house investment banking team," and working with ATIF management and counsel "on the NASDAQ listing application, providing support for items requested by NASDAQ and providing NASDAQ with a 'Plan of Distribution' letter" to further support ATIF's listing application, among other tasks.  *See* Second Am. Compl. ¶¶ 54–56.  These new allegations of specific actions Plaintiff took pursuant to the ATIF Agreement cure the deficiencies this Court identified when it dismissed Plaintiff's First Amended Complaint for failure to "identify a single specific action it took pursuant to the ATIF Agreement, including any facts

6

regarding the nature of the financial advice it gave to ATIF, any conversations it had with ATIF about its corporate development, or any firms or products it introduced to ATIF." *See* Order, Dkt. 82 at 6.

Defendant maintains, however, that this is insufficient because Plaintiff needed to have pled performance in connection with the ATIF-Leaping Transactions to adequately allege its entitlement to those Success Fees. Def. Mem. at 16; *see also* Def. Reply at 8 (claiming that this Court "in ruling on ATIF's motion to dismiss the FAC has already rejected [Plaintiff's] argument" that it was under no obligation to allege performance of tasks in support of the ATIF-Leaping Transactions). The Court disagrees with Defendant's characterization of its prior ruling.

Plaintiff has adequately pled performance at this stage. The Agreement states that Plaintiff is entitled to Success Fees for Defendant's EITs with any party that became aware of ATIF or became known to ATIF prior to the termination of the ATIF Agreement, but it remains unclear whether Plaintiff was required to facilitate the introduction of Defendant to the third party (or complete any other tasks) to be entitled to those Success Fees. Second Am. Compl. ¶ 29. Construing this ambiguity in Plaintiff's favor, Plaintiff's interpretation of its obligations under the ATIF Agreement as limited to actions related to ATIF's IPO is entirely plausible, thus foreclosing dismissal of Plaintiff's claim. Therefore, Plaintiff has adequately alleged its own performance under the ATIF Agreement and has cured the deficiencies identified in the First Amended Complaint.

### B. Plaintiff Has Plausibly Pled Satisfaction of a Condition Precedent

"Adequate performance" of a plaintiff's obligations under a contract includes satisfaction of conditions precedent to the defendant's obligations. *Harbinger F&G, LLC v. OM Grp. (UK) Ltd.*, 2015 WL 1334039, at *22 (S.D.N.Y. Mar. 18, 2015) ("A party seeking to enforce a contractual obligation subject to a condition precedent to performance must show it has satisfied all its obligations under the contract by a preponderance of the evidence."). A condition precedent is an "act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. Inc. v. Gen. Elec. Cap. Corp.*, 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017).

The parties agree that a condition precedent to Plaintiff's right to obtain Success Fees was that Plaintiff seek and receive FINRA approval for the underwriting terms in the ATIF Agreement. Def. Mem. at 11; *see also* Pl. Opp., Dkt. 120 at 4. What the parties dispute is whether Plaintiff adequately alleged satisfaction of the condition precedent. Def. Mem. at 12.

Rule 9(c) of the Federal Rules of Civil Procedure provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. Pro. 9(c). "Neither the Supreme Court nor the Second Circuit has considered Rule 9(c) since *Iqbal* and *Twombly* modified the notice pleading standard." *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017). Nevertheless, this Court and others in this district have held that post-*Iqbal*, Rule 9(c)'s command that conditions precedent be alleged "generally" requires a plaintiff to allege plausibly that they have satisfied the conditions precedent. *Id.* at *5–6 (citing *Dervan v. Gordian Grp., LLC*, 2017

8

WL 819494, at *6 (S.D.N.Y. Feb. 28, 2017) (holding that performance of a condition precedent must be plausibly alleged in accordance with Rule 8(a))).

Applying this standard, Plaintiff has plausibly pled satisfaction of the condition precedent that it obtain FINRA approval for the Success Fees. Plaintiff specifically alleged that it worked with, submitted material to, and obtained approval from FINRA for the ATIF IPO and Success Fees, as evidenced by the FINRA approval letter[5] and ATIF's successful IPO. Second Am. Compl. ¶ 54(J); Pl. Opp. at 12. Plaintiff further alleges that ATIF completed its SEC registration, which could not have happened absent FINRA approval. Second Am. Compl. ¶ 54(J).

Defendant argues that the FINRA approval letter obtained by Plaintiff was specific to ATIF's IPO, that Plaintiff was required to have the Amendment to the ATIF Agreement approved as a condition precedent, and that the FINRA approval letter does not actually constitute approval. Def. Mem. at 12–13. Defendant additionally argues that Plaintiff failed to allege that it received FINRA approval of the ATIF Agreement Amendment, which Defendant argues was a second condition precedent. *Id.* at 13. Defendant's arguments—while persuasive—are factual arguments that are not appropriately considered by the Court at this stage of the litigation.

---

[5] Plaintiff sought to include the FINRA approval letter in its opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. *See* Pl. Opp., Dkt. 72; Siegal Decl., Dkt. 73, Ex. A. Plaintiff did not attach the FINRA approval letter to its Second Amended Complaint, which ATIF contends Plaintiff "relies [on] and offers to show it performed [a] condition precedent." Def. Mem. at 12. Defendant now seeks to introduce the FINRA approval letter for consideration in the motion to dismiss (which Plaintiff has not disputed). *Id.* at 12 n.8. On a motion to dismiss, the Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). Plaintiff's reference to and heavy reliance on the FINRA Approval Letter in its complaint weighs towards allowing the document to be considered as part of the motion to dismiss. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010). First, Plaintiff explicitly references the FINRA approval letter in its pleadings ("FINRA issued a 'No Objections Letter' . . . approving the ATIF IPO and, thus, the Success Fee payment due under the ATIF Agreement"), which indicates that the FINRA approval letter is part of the pleadings, *Cortec*, 949 F.2d at 47, and Plaintiff has notice of the document. Second Am. Compl. ¶ 54(J). Second, Plaintiff relies heavily on the FINRA approval letter to cure the deficiencies in the First Amended Complaint. *See* Pl. Opp. at 12.

9

In construing the ATIF Agreement in the light most favorable to Plaintiff, Plaintiff has adequately pled performance of the condition precedent. Section Two of the ATIF Agreement provides that "[i]n connection with the services to be rendered hereunder, subject to FINRA approval, the company agrees to pay Boustead the following fees and expenses." Second Am. Compl. ¶ 29, Ex. D.[6] It remains unclear, however, whether Section Two of the contract required Plaintiff to obtain FINRA approval once or to obtain FINRA approval whenever the terms of the Agreement were amended. Nor is it clear whether failure to abide by FINRA's own terms (i.e., that Plaintiff submit any amendments to it for reapproval, *see* Johnson Decl. Dkt. 118, Ex. B) affected whether Plaintiff had fulfilled Section Two's requirement of obtaining FINRA approval. Thus, Plaintiff's interpretation of Section Two as only requiring FINRA approval of the initial ATIF Agreement is plausible, albeit barely, for purposes of this Motion, and Plaintiff has adequately pled satisfaction of the condition precedent that it obtain FINRA approval for the Success Fees.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The stay on discovery that the Court ordered on February 28, 2022, *see* Dkt. 122, is hereby LIFTED. An initial pretrial conference will be held on **Friday, July 29, 2022** at 10:00 a.m. in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007. No later than **July 21, 2022**, the parties must submit a joint proposed case management plan and joint letter. The joint letter must be no more than five pages and must address the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for

---

[6] This condition precedent, according to Defendant, remained in full force and effect even after the parties amended the Agreement because the Amendment did not remove the FINRA approval condition, "nor is the amended language in conflict with the ATIF Agreement's language concerning FINRA approval." Def. Mem. at 11 n.6.

the claim(s) and defense(s); (2) any contemplated motions; (3) the basis for subject matter jurisdiction; and (4) the prospect for settlement.

The Clerk of Court is respectfully directed to close the open motion at docket entry 117.

**SO ORDERED.**

Date:  July 6, 2022
        New York, New York

_____
VALERIE CAPRONI
United States District Judge

11